UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

DANIEL SALAZAR-GUTIERREZ,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 2:25-cv-260

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues the Michigan Department of Corrections and URF employees Sergeant Unknown King, Administrative Assistant Kim Atkinson, and Corrections Officer Unknown Pierce. Plaintiff names Defendants in their official capacities. (ECF No. 1, PageID.2.)

Plaintiff presents his allegations in the body of his complaint (ECF No. 1), as well as in his attached affidavit and statement (ECF No. 1-1, PageID.7–9). Plaintiff alleges that he suffers from a seizure disorder for which he takes medication. (ECF No. 1-1, PageID.7.) Plaintiff states that on May 16, 2025, while he was confined at URF, he suffered from a seizure at around 9:37 a.m. while in his GED class. (*Id.*; ECF No. 1, PageID.3.) Plaintiff's teacher and fellow student provided help to Plaintiff during his seizure. (ECF No. 1-1, PageID.7.) Plaintiff states that Defendant King and medical staff came and placed Plaintiff in a restraint chair in order to take him to health care. (ECF No. 1, PageID.3.)

Plaintiff states that while he was in health care, he suffered a second seizure. (*Id.*) Plaintiff asserts that while he was having the second seizure, he grabbed Defendant King's arm, which caused Defendant King to "knee and punch" Plaintiff. (*Id.*) Plaintiff attests that Defendant King "rammed [his] face into the wall, causing serious injuries to the right side of [his] face, including swelling and a black eye." (ECF No. 1-1, PageID.7.) Plaintiff claims that the assault by Defendant King was witnessed by another prisoner. (ECF No. 1, PageID.3.)

Defendant King then falsified a Class I misconduct report against Plaintiff for assault and battery and disobeying a direct order. (*Id.*; ECF No. 1-1, PageID.7.) On May 28, 2025, Plaintiff was found not guilty of the misconduct charges. (ECF No. 1-1, PageID.8.)

In the misconduct report, Defendant King stated:

> While responding to a medical emergency in the West School [Plaintiff] started to become assaultive towards staff. [Plaintiff] started to try and pull my right hand off

2

> his right arm. [Plaintiff] was then placed in wrist restraints and again grabbed my hand to try and pull away. I gave [Plaintiff] loud verbal orders to stop resisting as he continued to try and pull away from this supervisor. These actions were carried out to interfere with my job duties and to cause injuries to this supervisor.

(*Id.*, PageID.12.)

Plaintiff attaches a copy of the Class I hearing report to his complaint, which addresses the evidence considered during the hearing:

> The hearing is commenced by watching of the video that is found to be confidential for the security of the facility. The video is consistent with the report. The prisoner is informed. The hearing is conducted via Video Teleconferencing. Unless otherwise noted, documents are one page. This hearing is timely held within the required 7 business days. The prisoner is present and the misconduct report is reviewed with him along with his statement he had a seizure and does not recall what happened until he woke up in health care, Sgt Rosebrock's statement that he used a translator for the review, Translator Confirmation, Health Care Disclosure, Health Care records (10 pg), and Memo regarding the Video that is found to be confidential for the security of the facility. [Plaintiff] has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanction and sanction dates and told he will receive report later.

(*Id.*, PageID.13.)

In finding that Plaintiff was not guilty of the charge of assault and battery, the Hearing Officer stated that because Plaintiff was having a seizure at the time he grabbed Defendant King, he could not be responsible for his actions nor was his intent to physically resist or harm staff. (*Id.*) The Hearings Officer further stated that Plaintiff was not guilty of disobeying a direct order because he was not capable of following orders while he was having a seizure. (*Id.*)

Plaintiff states that Defendant Pierce retaliated against him for beating the misconduct ticket by falsifying a Class II misconduct report which stated that Plaintiff had been in the base area without authorization while on non-bond status. (*Id.*, PageID.8.) Plaintiff states that Defendant Pierce backdated the misconduct to May 27, 2025, to fit the time that Plaintiff had been on non-bond status. (*Id.*) This misconduct charge was later rescinded. (ECF No. 1, PageID.3.)

Plaintiff states that he filed a grievance on Defendant King on June 5, 2025, complaining of the fact that Defendant King had assaulted him while handcuffing him during the second seizure. (*Id.*) Plaintiff asserts that Defendant Atkinson erred when she claimed that Plaintiff's step II appeal of this grievance was untimely, and that any delay in the filing of the step II appeal could only be attributable to MDOC staff. (*Id.*)

Plaintiff seeks damages in the amount of 2.5 million dollars. (*Id.*, PageID.4.) He also notes that he does not feel safe at URF and asks that he not interact with the Defendants. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

4

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against Defendant MDOC and Official Capacity Claims Against Individual Defendants

As noted above, Plaintiff names the MDOC and individual employees at URF solely in their official capacities. Plaintiff may not maintain a § 1983 action against the MDOC. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Similarly, Plaintiff may not seek monetary damages against the individual Defendants in their respective official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, Plaintiff's claims for damages against the MDOC and the individually named Defendants in their official capacities are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

The Court notes that in addition to damages, Plaintiff asks that he not interact with Defendants. Arguably, this request might as a claim for injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In the present action, Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective, and his claims do not fit within the *Ex parte Young* exception. *See Ladd*, 971 F.3d at 581.

For all of these reasons, Plaintiff has failed to state a claim against Defendant MDOC or the individual Defendants in their official capacities upon which relief may be granted. Accordingly, Plaintiff's claims are properly dismissed for failure to state a claim.

### B.     Merits review of claims

As noted above, Plaintiff names Defendants solely in their official capacities. However, even if he did name Defendants in their personal capacities, his claims would be properly dismissed for lack of merit.

### 1. Defendant Atkinson

Plaintiff's only claim against Defendant Atkinson is that she erred when she claimed that Plaintiff's step II appeal of this grievance was untimely, and that any delay in the filing of the step II appeal could only be attributable to MDOC staff. (ECF No. 1, PageID.3.)

#### a. Due Process

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

#### b. First Amendment - Right to Petition Government

Plaintiff's right to petition government is not violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints . . . .'" *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from exhausting his grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).

The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Atkinson.

### 2. **Defendant Pierce**

Plaintiff states that after he was found not guilty on a major misconduct ticket issued by Defendant King, Defendant Pierce retaliated against him by falsifying a Class II misconduct report for being in the base area without authorization while on non-bond status. (ECF No. 1-1,

8

PageID.8.) Plaintiff states that Defendant Pierce backdated the misconduct to May 27, 2025, to fit the time that Plaintiff had been on non-bond status. (*Id.*) This misconduct charge was later rescinded. (ECF No. 1, PageID.3.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming that Plaintiff was engaged in protected conduct when he successfully challenged the major misconduct ticket written by Defendant King, his claim that Defendant Pierce acted with a retaliatory motive is entirely conclusory. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints

9

screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff fails to allege any specific facts showing that his success in challenging the major misconduct ticket written by Defendant King was a substantial or motivating factor in Defendant Pierce's conduct. Accordingly, his speculative allegation fails to state a claim against Defendant Pierce.

### 3. Defendant King

Plaintiff claims that Defendant King subjected him to excessive force in violation of his Eighth Amendment rights. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986) should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

As noted above, Plaintiff attaches copies of the misconduct report and the misconduct hearing report to his complaint as exhibits. According to the misconduct report, Plaintiff "started to become assaultive towards staff . . . [and] to try and pull [Defendant King's] right hand off his right arm. [Plaintiff] was then placed in wrist restraints and again grabbed [Defendant King's] hand to try and pull away." (ECF No. 1-1, PageID.12.) The report also states that Defendant King gave Plaintiff loud verbal orders to stop resisting as Plaintiff continued to try and pull away from Defendant King. (*Id.*) The misconduct hearing report indicates that video of the incident was consistent with Defendant King's account of the events. (*Id.*, PageID.13.) Plaintiff states that he has no memory of the events, as he was suffering from a seizure at the time. (*Id.*)

Based on Plaintiff's complaint and the attachments thereto, it is clear that Plaintiff was resisting Defendant King at the time of the incident and that Defendant King acted in order to restrain Plaintiff. Plaintiff fails to allege that Defendant King was aware that Plaintiff was having a second seizure and was not in control of his actions. Nothing in Plaintiff's complaint indicates that the use and amount of force was not "reasonably perceived" by Defendant King as necessary at the time it was employed. *Hudson*, 503 U.S. at 7. Therefore, even if Plaintiff had named Defendant King in his personal capacity, he fails to state an Eighth Amendment claim against him.

11

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610–11.

A judgment consistent with this opinion will be entered.


Dated:   December 9, 2025                          /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge